People v Phipps (2024 NY Slip Op 51672(U))

[*1]

People v Phipps

2024 NY Slip Op 51672(U)

Decided on December 6, 2024

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 6, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Brian Phipps, Defendant.

Docket No. CR-030269-24BX

Daniel Lewis, J.

On November 27, 2024, Defendant was arraigned on the charge of VTL 1192(2) based on his alleged operation of a motor vehicle on November 26, 2024 at approximately 5:52 p.m. in Bronx County while he had a blood alcohol content exceeding .08 per cent. The arraigning judge, J. Sorrentino, suspended Defendant's NYS driver's license pursuant to VTL 1193(2)(e), and defense counsel requested the case be adjourned for a "hardship hearing" under VTL 1193(2)(e)(7)(e).
On December 3, 2024, the presiding judge in AP4, J. Lewis, held the hardship hearing. Below constitutes the court's findings of fact and law from that hearing.
Findings of Fact
Jannette Hodapp
Defense first called Jannette Hodapp, who testified that she is Defendant's girlfriend and has lived with Defendant at 161 Ballantyne Road in Syracuse, NY for the past 13 years. Ms. Hodapp has worked at Wegmans full-time, five days/week, for the past two years.
Ms. Hodapp testified that she does not have a driver's license and that Defendant typically drives her to work twice a week. Defendant also often gives Ms. Hodapp's co-workers a ride to work. On days when Defendant does not give Ms. Hodapp ride, she takes the bus or car service.
Ms. Hodapp testified that it takes 3 — 15 minutes to walk from her residence to the bus stop. Additionally, Ms. Hodapp testified that she believes Defendant would be late for work if he was forced to rely on the bus because the service is unreliable, something she has experienced firsthand.
Brian Phipps (defendant)
Defense next called Defendant, who testified that he has lived with Jannette Hodapp for the past 13 years at 161 Ballantyne Road in Syracuse, NY. Defendant has worked at Walmart full-time for the past 18 months, doing maintenance and janitorial work. His shift is 10:00 p.m. to 7:00 a.m., and he earns $16.80/hour.
Defendant testified that he owns a 2018 Honda CR-V, and often drives three co-workers to work because they do not have driver's licenses. The total commute time by car is [*2]approximately 15 minutes each way. He is not required to transport equipment to work. Defendant testified that he occasionally gives Ms. Hodapp a ride to work. The court asked Defendant how far away Walmart was from Wegmans, and Defendant replied that they are on opposite sides of town, miles apart, further explaining "we're talking about Western Lights versus East Syracuse, so that's - - that might be 15, 20 miles, 30 miles, the most."
Regarding other modes of transportation, Defendant testified that car service and bus are available and that getting a ride from someone else is possible. He stated an Uber from his home to work costs $10 - $30 each way depending on the time of day. He further testified that he does not know specifically what Lyft is but then clarified "a Lyft and an Uber is the same thing to me." Then, he testified that a bus stop is close to his house and that he passes it on the way to work. There was some confusion whether Defendant has ever taken the bus, but it is clearly not Defendant's normal practice to commute to work by bus. Defendant stated that the one-way commute time would be approximately 50 minutes, a duration Defendant opined was a reasonable time to get to work. Finally, Defendant stated that he could not rely on his sister for transportation because she lives on the opposite side of Syracuse, he does not know whether she has a driver's license, and they do not have a close relationship. When asked if a friend could give Defendant a ride to work he stated, " If he's not willing to give me a ride, I can't get to work."
Defendant stated that under Walmart's disciplinary system an employee is fired after accruing four points. Points are accrued in .5pt, full point, or 2-point increments depending on the type of violation and when the violation occurs. For example, missing work without an excuse normally results in a full point, but during a "shaded" period would result in two points. Defendant stated that he currently has 1.5 points, but if his supervisor did not approve his excusal for this court appearance, he would have 2.5 points. On cross-examination, Defendant admitted that he has not asked for an accommodation, such as changing his hours, to his work schedule and has not researched the possibility of taking the bus to work.
Judicial Notice
The court took judicial notice of the following documents with defense counsel's consent:
• A Google map, showing that the estimated time to commute from 161 Ballantyne Road, Syracuse, NY to 6438 Basile Rowe, East Syracuse, NY by bus is 58 minutes if one departs at 8:37 p.m.
• A printout of "Syracuse Ride Passes" from the website of the bus service provider (Centro), showing the price range of bus passes.
• A printout of "Fares and Passes FAQ" from the Centro website, particularly showing that "MAX Pass" is valid for seven consecutive days, with unlimited rides, and costs $12.00. • Defendant's CJA report.
Findings of Law
The court finds that Jannette Hodapp and Defendant were credible witnesses and that they testified truthfully. Although Defendant contradicted himself regarding his familiarity and use of Lyft, such a mistake is understandable given Defendant's age and familiarity with digital systems, the relative recency of the technology, and the lack of distinguishing features between one online car service provider and another. It did not impact his credibility or that of his [*3]testimony.
Under VTL 1193(2)(e)(7)(e), the court may grant a "hardship privilege" if it finds that a defendant's suspension of driving privileges "will result in extreme hardship." Here, the only applicable "extreme hardship" prong is "the inability to obtain alternative means of travel to and from the licensee's employment." VTL 1193(2)(e)(7)(e). Notably, VTL 1193(2)(e)(7)(e) places the burden of proving extreme hardship on the licensee and a finding of extreme hardship "may not be based solely upon the testimony of the licensee."
In People v. Bridgman, 163 Misc 2d 818 (City Court, City of Canandaigua, 1995), the court set forth the factors it believed merit consideration for extreme hardship. Specifically, "(1) the presence or absence of licensed persons present in the licensee's household; (2) the ability of other licensed household members to provide transportation for the licensee; (3) the occupation and health condition of the licensee; (4) the proximity of the licensee's place of employment to his or her household; (5) the presence or absence of any public transportation or taxi service to or from the licensee's household to the place of employment (6) a consideration of the licensee's ability to afford public transportation or taxi service as an alternative means of transportation; (7) the presence or absence of co-workers, friends, or family members who may assist in the licensee's transportation; and (8) any other factor the court deems appropriate to the determination." People v. Bridgman, 163 Misc 2d 818, 820 (City Court, City of Canandaigua, 1995). 
Although the Canandaigua City Court is not binding authority, this court finds its reasoning highly persuasive. In this case, factors one and two militate towards a finding of extreme hardship, as Defendant lives only with Ms. Hodapp, and she is unlicensed. However, factor three militates against extreme hardship, as no testimony was elicited regarding Defendant's physical limitations, and indeed the opposite can be inferred, as not only did Defendant appear at the hearing to be a healthy, physically fit, sixty-year-old man, but also Defendant's job requires a degree of physical fitness. Additionally, Defendant testified that all equipment required to perform his job was provided by Walmart, and he was not required to bring any equipment with him. Factors five and seven argue against extreme hardship because bus service and car service are available, as acknowledged by both witnesses, and Defendant admitted that his friends may be able to give him a ride to work.
In this case, the court gives particular weight to factor six and finds that the analysis should include the feasibility of public transportation or car service in addition to the affordability of the same. Although Uber or Lyft are feasible options and Defendant has availed himself of these services in the past, forcing Defendant to rely exclusively upon Uber or Lyft would be an extreme hardship, as forcing someone who earns $16.80/hour, to pay $20 - $60 every day for round trip transportation is not affordable. 
However, the same cannot be said for the public transportation available. The evidence adduced indicates that Defendant could commute to and from work (and anywhere else within Syracuse) by bus for $12/week, an affordable amount. Additionally, this court finds that public transportation is feasible. Although Ms. Hodapp testified that bus service is unreliable, it is unclear whether this is only true for the bus route Ms. Hodapp uses or for all Centro routes. Indeed, given the "clear across town" distance between Wegmans and Walmart Defendant testified to, it seems unlikely Defendant would use the same bus as Ms. Hodapp. Nor was any testimony elicited regarding the particular bus or route Defendant would take or its reliability. Furthermore, according to the Google map, the bus stop Defendant would use is .1 miles from [*4]his home and, after one transfer, drops him off directly at his place of employment approximately 58 minutes later, a duration close to the 50-minutes that Defendant himself acknowledged was reasonable commute time. For a healthy, sixty-year-old man, unencumbered by any equipment, the bus is a feasible option.
After applying the Bridgman factors and considering the feasibility, in addition to the affordability, of a public transportation or car service alternative, the court finds that Defendant has failed to establish "the inability to obtain alternative means of travel to or from the license's employment." VTL 1193(2)(e)(7)(e); See also, People v Luja, 82 Misc 3d 469, 477 (Crim Ct Bronx County 2023). Therefore, Defendant's request for a "hardship privilege" is denied.
The foregoing constitutes the opinion, decision, and order of the Court.
Dated: December 6, 2024
Bronx, New York
_________________________
DANIEL M. LEWIS, J.C.C.